## Rhodes *against* Sneed.

A WARRANT on behalf of *Solomon Rhodes* against *James Sneed* for $42, due by account, was issued by *W. Purris*, as a Justice of the County Court of *Tuskaloosa* County, on the 8th day of *June*, 1821. On the 23d day of *June*, 1821, judgment for the plaintiff was rendered by *Isaac Patrick*, Chief Justice of the County Court of that County, for $42 and costs. *Sneed* appealed to the Circuit Court, and a verdict was there rendered against him; but judgment was arrested on reasons filed by him. *Rhodes* here assigned that the Circuit Court erred in arresting the judgment.

*Barton* and *Pickens*, for plaintiff; *Owen* and *Ellis*, for defendant in Error.

Judge *Taylor* delivered the opinion of the Court.

The investigation of this case brings before the Court different points of some importance; and although the amount in controversy is small, the case *is not free from* difficulty.

The ground of the motion in arrest of judgment was, that the warrant was issued by a Justice of the County Court, and judgment rendered by the Chief Justice of that Court.

The first question to be considered, and which has involved, we may say, all the difficulties in the case, is this: Can the Circuit Court, on a motion in arrest of judgment, look back to the proceedings before the Justice?

In the case of *Gayle* vs. *Turner*, (a) decided in this Court, it was determined " that proceedings of Justices of " the Peace (except in cases of forcible entry and detainer) " are strictly and technically Records." In that case the matters involved in the assignments of Error, to which the part of the opinion above quoted relates, arose entirely on the mode of issuing and returning the warrant. In giving the legal construction to the decision, we are to apply the opinion of the Court to the case before them; and if the opinion was broader than necessary for the determination of that case, such part of it as was unnecessary to the decision of the cause was a mere dictum of the Judge who delivered it, not possessing the force of authority. Nothing but defects in the warrant were involved in the case of *Gayle* vs. *Turner*, so far as advantage was sought to be taken of the errors in the proceedings before the Justice of the Peace. The decision, therefore, that none of the proceedings before

*Since the Act of 1819, the Chief Justice of the County Court cannot try a case as a Justice of the Peace.*

(a) *ante*, 204.

a justice of the Peace are of the dignity of a Record, was unnecessary to the adjudication of that case, and is (further than relates to the warrant) a mere dictum. The judgment rendered by the Justice, the appeal and the appeal bond thereon, as I think, possess a different character from the warrant; and where a case is carried from a Justice of the Peace into a Court of Record by appeal, necessarily become a part of the Record, if not as proceedings of the Justice as part of the case in the Court to which the appeal is carried; they are essential and necessary to the jurisdiction of the appellate Court. If there were no judgment of the Justice, there could be no appeal; and if no appeal, or appeal bond, the case could not be brought within the jurisdiction of the appellate Court; and such Court, upon discovering at any stage of the cause that it never had been properly transferred from the Justice to that Court, in my opinion would on motion be bound to dismiss the cause, whether before or after verdict. If this principle be not correct, there may be two independent judgments against the same party for the same cause of action, and an execution may issue on each; for, until an appeal, the Justice is bound to enforce his judgment.

A majority of the Court is therefore of opinion, that after an appeal from a Justice's judgment, the appeal and appeal bond become matters of Record, so far as they are necessary to bring the case into the Court to which the appeal is taken; and that such Court, if it appear that the cause has never been legally brought into it, ought to entertain a motion in arrest of judgment.

Was this case legally brought into the Circuit Court?

The judgment on which the appeal was taken was rendered by *Isaac Patrick*. To his signature thereto are annexed the letters " C. J. C. C." I do not know that we could consider these letters as of themselves importing any thing; but in the appeal bond, taken and attested by *Isaac Patrick*, it is particularly stated that he is Chief Justice of the County Court. We are then specifically informed that the judgment was rendered by, and the appeal and appeal bond taken, before the Chief Justice of the County Court; and it is unnecessary to determine whether or not this Court is bound to know who are Justices of the Peace, and who Justices and Chief Justice of the County Court; though, if necessary, we feel little difficulty in saying that we should be bound to know them, particularly the latter, who are elected by the General Assembly.

Could the Chief Justice of the County Court exercise the powers of a Justice of the Peace? Before the adoption of our

State Constitution, this power was expressly vested in them; but after the adoption of the Constitution, our judicial system was reorganized, and we are not to look to the powers before vested in any judicial officer to ascertain those which he afterwards possessed, unless they are referred to and given by the Constitution or some subsequent Statute. The Act of 1819, establishing the County Court, defines its powers. It does not, nor does any subsequent Statute, give to the Justices of the County Court authority, as such, to try and give judgment in any cause unless in the County Court. But it was urged in argument, that before the adoption of the Constitution and the enactment of the Act of 1819, the Chief Justice of the Orphans' and County Court was vested with the powers and jurisdiction of a Justice of the Peace; and that it is enacted by the supplementary Act of 1819, " that the Chief Justice of the County Court of each " County shall be vested with the powers and perform the " duties which heretofore appertained to the office of Chief " Justice of the Orphans' and County Court."

To ascertain the meaning of the Legislature, we must look back to the powers of the Chief Justice under former laws; and we find that, as such, he was authorised to do many acts which could not be performed by any of his associates; such as making final settlements with Adminstrators and Executors; granting, in specified cases, letters testamentary, and of administration; presiding in the County Court, &c. &c. but the power to issue warrants and try the matters arising thereon was vested in him equally with the other Justices, as a Justice of Quorum, and not as Chief Justice. I am therefore clearly of opinion that the Chief Justice had no more power to try a warrant than any other Justice of the County Court.

It appearing that the judgment from which the appeal was taken to the Circuit Court was rendered by a person having no jurisdiction of the case, the judgment of the Circuit Court, in arrest of judgment, must be affirmed.

The Chief Justice not sitting.

See Laws Ala. 175, 186, 190.